**RANEN KHADEMI PC**
Jeffrey S. Ranen (SBN 224285)
 jranen@ranenkhadeemi.com
Parisa Khademi (SBN 271897)
 pkhademi@ranenkhademi.com
Alec Morgan (SBN 351596)
 amorgan@ranenkhademi.com
Camden D. Swanson (SBN 355594)
 cswanson@ranenkhademi.com
12121 Wilshire Boulevard, Suite 810
Los Angeles, CA 90025
Telephone: (213) 789-6549

**JOSHUA KLUGMAN, ESQ.**
Joshua Klugman (SBN 236905)
 joshua@discriminationlawyerla.com
9538 Pico Blvd, No. 200
Los Angeles, CA 90035
Telephone: (424) 248-5148

Attorneys for Plaintiff
NICHOLAS MCARTHUR

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS MCARTHUR, an individual,<br><br>Plaintiff,<br><br>v.<br><br>RELX INC, a Delaware Corporation, and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 2:25-cv-06120-SK<br><br>[Assigned for all purposes to: Hon. Robert B. Broadbelt, Dept. 53]<br><br>**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>[*Filed concurrently with Separate Statement; Declarations of Alec J. Morgan and Nicholas McArthur*]<br><br>**Date:  July 29, 2026**<br>**Time:  10:00 a.m.**<br>**Place:  Edward R. Roybal Federal Building**<br>**Judge: Hon. Steve Kim**<br><br>Action Filed:     June 3, 2025<br>Trial Date:       November 3. 2026 |

1

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT**

| Moving Party's Uncontroverted Facts and Supporting Evidence | Opposing Party's Response to Cited Fact and Supporting Evidence |
|---|---|
| 1.  LNRS is a business unit of RELX.  Second Amended Complaint ("SAC") ¶ 5. | 1. Undisputed, but immaterial. |
| 2.  Plaintiff is a former employee of LNRS.  SAC at ¶ 5. | 2. Undisputed, but immaterial. |
| 3.  Plaintiff was hired by Accuity Inc. ("Accuity") in 2011. Shortly thereafter, Accuity was acquired by a subsidiary of RELX. In 2021, Accuity was merged into LNRS.  Deposition Transcript of Nicholas McArthur ("McArthur Tr.") at 70:21-71:6. | 3. Undisputed, but immaterial. |
| 4.  LNRS employed Plaintiff in its London office from approximately 2011 to 2018.  SAC ¶ 8. | 4. Undisputed, but immaterial. |
| 5.  In 2018, LNRS transferred Plaintiff to the United States after Plaintiff's wife was hired by a U.S.-based company.  SAC ¶ 8; McArther Tr. 46:22-48:2. | 5. Undisputed, but immaterial. |
| 6.  Following his transfer, Plaintiff transitioned to the role of Director of Sales for LNRS | 6.  Undisputed, but immaterial. |

PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

| | |
|---|---|
| SAC ¶ 8. McArthur Tr. 47:11-13. | |
| 7. At all times, Plaintiff was an at-will employee.<br><br>Ex. 7; McArther Tr. 71:21-72:1. | 7. Undisputed, but immaterial |
| 8. In August of 2021, LCRS inadvertently paid Plaintiff a duplicative retention bonus of $75,000 ("Duplicative Retention Bonus")<br><br>McArther Tr. 202:16-203:11, 205:23 – 206:2; 209:19 – 22. | 8. Undisputed, but immaterial. |
| 9. A few months or so after payment of the Duplicative Retention Bonus, Employee Relations reached out to Plaintiff to address the overpayment.<br><br>McArthur Tr. 207:2-10. | 9. Undisputed, but immaterial. |
| 10. Plaintiff acknowledged receipt of the Duplicative Retention Bonus<br><br>McArthur Tr. 207:2-10, 209:19-22. | 10. Undisputed, but immaterial. |
| 11. On January 22, 2024 Plaintiff signed a Repayment of Duplicative Retention Bonus Agreement (Repayment Agreement").<br><br>Ex. 26; McArthur Tr. 202:16-203:11. | 11. Undisputed, but immaterial. |
| 12. Pursuant to the Repayment | 12. Undisputed, but immaterial. |

3

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

| | |
|---|---|
| Agreement, Plaintiff agreed to repay the Duplicative Retention Bonus in the after-tax net amount of $41,025 over the course of the following twelve months, beginning in December 2023, with one-half of the agreed repayment amount of $20,512.50 to be paid by June 30, 2024, and the balance no later than December 31, 2024<br><br>Ex. 26 ¶ 2. | |
| 13. Plaintiff acknowledged and agreed that "his failure to timely repay on half of the Duplicative Retention Bonus by June 30, 2024, or all of the Duplicative Retention Bonus by December 31, 2024… May Result in disciplinary action, up to an including termination."<br><br>Ex. 26 ¶ 8. | 13. Undisputed, but immaterial.<br><br>Linda Spinner, Jim MacKillop, and Joseph Gaines all independently testified that Plaintiff's failure to timely repay the Duplicative Retention Bonus was not a factor in the termination decision.<br><br>Deposition Transcript of James MacKillop ("MacKillop Tr.") at 54:7-18; Deposition Transcript of Linda Spinner ("Spinner Tr.") at 60:12 - 25; Deposition Transcript of Joseph Gaines ("Gaines Tr.") at 48:8 - 12. |
| 14. At deposition, Plaintiff admitted that he has "never disputed [that Plaintiff owed LNRS repayment of the Duplicative Retention Bonus] once."<br><br>McArthur Tr. 203:25-204: 1. | 14. Undisputed, but immaterial. |
| 15. Plaintiff claimed he made a $2,000 payment toward the | 15. Undisputed, but immaterial. Disputed insofar as it implies that |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

| | |
|---|---|
| amount owed under the Repayment Agreement, but admitted he did not pay one-half of the amount owing by June 30, 2024 and that he has made no payments other than the alleged $2,000 payment.<br><br>McArthur Tr. 206:3-17, 212:3-5. | Plaintiff has not completed payment as of this filing. On July 6, 2026, issued a check payable to RELX INC. in satisfaction of monies owed.<br><br>McArthur Decl. at ¶ 7 |
| 16. In September of 2023, LNRS Senior Vice President of Strategic Sales, Joe Gaines ("Gaines"), informed Plaintiff that LNRS was reorganizing the Business Services sales team and as a result, Plaintiff would be reporting to a new direct supervisor.<br><br>McArthur Tr. 75:6-77:6. | 16. Undisputed, but immaterial. |
| 17. Under the restructuring, Plaintiff joined the Core Strategic Digital Markets and began reporting to LNRS Sales director, Linda Spinner ("Spinner").<br><br>McArthur Tr. 82: 17-83:20, 87:2-88:11. | 17. Undisputed, but immaterial. |
| 18. Plaintiff was also informed that his role was being changed from a coaching role to a "player-coach" role, adding direct sales responsibilities to his job duties.<br><br>McArthur Tr. 102:20-104: 10. | 18. Undisputed, but immaterial. |
| 19. Plaintiff would also be selling products that were new to him, | 19. Undisputed, but immaterial. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

| | |
|---|---|
| and which he would need to learn.<br><br>McArthur Tr. 95:22-96:24. | |
| 20. Plaintiff initially did not accept the new role and told Gaines he needed time to think about it.<br><br>McArthur Tr. 87:23-88: 11. | 20. Undisputed, but immaterial. |
| 21. Gaines agreed that Plaintiff could think about the new role, but informed Plaintiff that the new role was his only option if he wanted to stay with the company.<br><br>McArthur Tr. 88:12-23; Transcript of Joe Gaines ("Gaines Tr.") 50:18 - 52:21. | 21. Undisputed, but immaterial. |
| 22. Plaintiff then suggested to Spinner's superior Jim MacKillop ("MacKillop"), that Plaintiff should continue to work in the role he had previously worked, and that Gaines had approved of this, which was not true.<br><br>Gaines Tr. 50:18 – 52:21 | 22. Undisputed, but immaterial. |
| 23. Plaintiff ultimately accepted his new role, which was to begin on January 1, 2024<br><br>McArthur Tr. 93:15-17. | 23. Undisputed, but immaterial. |
| 24. In his 2023 Performance Review, Plaintiff was rated "Requires | 24. Undisputed, but immaterial. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

| | |
|---|---|
| Improvement" – the lowest possible ranking at LNRS.<br><br>Ex. 18; McArthur Tr. 150:5-21. | |
| 25. In Plaintiff's 2023 Performance Review, Dave Lindsay, Plaintiff's manager prior to the re-organization, wrote:<br><br>C]ore counterpart Directors are not hearing from Nick nor do they have any understanding of his teams' strategy and engagement with core.<br><br>During this last quarter and transition to Jim's team, a recurring theme has been Nick's lack of engagement, from Jim and his Directors, including missing calls and not being present. There has also been limited engagement with his own team, not attending his own team calls on multiple occasions. I have observed Nick being late to my Director calls and late on many deadline requests, requiring reminders. I have had members of Nick's team reach out directly to me asking for help on topics Nick should be managing."<br><br>I also spoke with him earlier this year about rebuilding and repairing his relationships with Jim's team after partnering rep challenges from 2022.<br><br>Much work is still needed across | 25. Undisputed. |

7

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

| | |
|---|---|
| the DM leadership team based on multiple discussions I've had with Jim and his directors over the second half of 2023.<br><br>Ex. 18. | |
| 26. On January 3, 2024, Plaintiff went on vacation to visit family in the United Kingdom.<br><br>McArthur Tr. 89:15- 91:18. | 26. Undisputed, but immaterial. |
| 27. Plaintiff did not seek approval for his trip in advance.<br><br>McArthur Tr. 90:7-91:18. | 27. Disputed.<br><br>Before transitioning to the new position reporting to Ms. Spinner, Mr. McArthur requested time off both formally through the company and informally by way of an Outlook invite identifying time off.<br><br>McArthur Tr. 90:20-91:18. |
| 28. Plaintiff Returned to work on January 11, 2024.<br><br>McArthur Tr. 89: 15- 91 :6; Ex. 12, at 2. | 28. Undisputed, but immaterial. |
| 29. On January 6, 2024, while Plaintiff was still on holiday, Spinner sent Plaintiff an email listing the objectives of his new role, stating that during her last call with Plaintiff, Plaintiff had expressed "confusion about the roles and responsibilities for the player/coach role on my team" and to give him "an understanding of the expectations, as the objectives | 29. Undisputed, but immaterial. |

8

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

| | |
|---|---|
| listed below will be the basis for the KPOs [Key Performance Objectives] that you will need to update into Workday later this month." Ex. 9; McArthur Tr. 93:22-94:22. | |
| 30. These objectives included (1) "Core Focused Onboarding," (2) "Account Owner-ship Responsibilities," and (3) "Daily Work Effort." Ex. 9. | 30. Undisputed, but immaterial. |
| 31. The first objective focused largely on training and preparation "to be actively engage in SKO" (Sales Kick Off, a three-day annual event occurring later that month) and training and certification on the new core products Plaintiff would be selling, which Plaintiff needed to complete within the first six months of his new role. Ex. 9; McArthur Tr. 95:22-97:18. | 31. Undisputed, but immaterial. |
| 32. The second objective included various account related activities and closed business. Ex. 9. | 32. Undisputed, but immaterial. |
| 33. The third objective including, among others, attending regularly scheduled calls and assigned trainings, providing Spinner with weekly "Radar Reports" on | 33. Undisputed, but immaterial. |

9

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

| | |
|---|---|
| Plaintiff's work activities, and inputting accurate and timely sales-related information into the Salesforce program.<br><br>Ex. 9; McArthur Tr. 101:5-15. | |
| 34. Shortly after his return in January, Plaintiff was late for his first customer call, with The Bancorp, which Spinner was also attending.<br><br>McArthur Tr. 108:2-11; Ex. 10. | 34. Undisputed.<br><br>McArthur Tr. 108:6 – 109:22 |
| 35. After the call, Spinner called Plaintiff and asked him why he had been late for his very first customer call, to which Plaintiff replied, "Linda can we just keep this positive," resulting in Spinner becoming frustrated."<br><br>Ex. 10; McArthur Tr. 107:22-110:8. | 35. Undisputed.<br><br>McArthur Tr. 108:6 – 109:22 |
| 36. During the following week, Plaintiff failed to send Spinner his required Friday Report, and failed to set up a call with another customer, Netspend, which was being transferred to Plaintiff, even though he had been asked to do so.<br><br>Ex. 11; McArthur Tr. 110:15-115:25. | 36. Undisputed. |
| 37. Plaintiff arrived late to the first day of the LNRS Sales Kick Off event at the end of January 2024, sat at a back table, and did not engage with his team. | 37. Disputed.<br><br>Plaintiff engaged with the team on the first day attending welcome events and drinks. He felt unwell during the trip, |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

| | |
|---|---|
| Ex. 12 at 2; McArthur Tr. 96:25-100:7, 110:15 – 115:25 | however, as his family had contracted norovirus. Out of due caution and respect for other team members at the SKO, one of whom was pregnant at the time, Plaintiff chose to distance himself from the rest of the team. Plaintiff even informed Spinner of his poor health for which he was taking anti-diarrheal medication.<br><br>McArthur Tr. 97:9 – 100:7 |
| 38. Plaintiff left the Sales Kick Off early on the first day and did not return, instead flying home, citing that he did not feel well.<br><br>McArthur Tr. 96:25-100:7. | 38. Disputed.<br><br>Plaintiff engaged with the team on the first day attending welcome events and drinks. He felt unwell during the trip, however, as his family had contracted norovirus. Out of due caution and respect for other team members at the SKO, one of whom was pregnant at the time, Plaintiff chose to distance himself from the rest of the team. Plaintiff even informed Spinner of his poor health for which he was taking anti-diarrheal medication.<br><br>McArthur Tr. 97:9 – 100:7 |
| 39. On January 22, 2024, Spinner reached out to LNRS Employee Relations to outline some of her concerns about plaintiff's lack of engagement, disinterest in his new role, and negative attitude. After summarizing a number of Plaintiff's performance Spinner stated as follows:<br><br>Nick has made it extremely clear | 39. Undisputed as to the existence of Spinner's correspondence. Disputed as to the content of Spinner's correspondence.<br><br>Plaintiff was looking forward to working in the new role upon his return from vacation in January of 2024. In fact, he engaged Katrin at the SKO event upon his arrival |

11

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

| | |
|---|---|
| that he did not want this job, that he is unhappy reporting to me, and remains completely disengaged. I do not see any willingness to learn about any of our other solutions nor any desire to work with the team to become a contributing member.<br><br>He has never once reached out to Katrin. He did not even speak to her at the sales meeting. I would like to move to move him out of our business as soon as possible. His attitude is negative and it is making things very uncomfortable for the rest of the team.<br><br>Declaration of Linda Spinner ("Spinner Decl."), 3, Ex. A. | McArthur Tr. 89:15 – 90:6; 97:9 – 100:7 |
| 40.  On January 31, 2024, Spinner opened an Employee Relations Report with LNRS Employee Relations to initiate potential disciplinary action against Plaintiff.<br><br>Spinner Decl., ¶ 4 & Ex. B (Ex. 12 to McArthur Dep. ). | 40. Undisputed. |
| 41.  Among other things, Spinner reported as follows:<br>   [Plaintiff has been absent from role and not adaptive to changes. Since changed has not engaged with team. After 19 days have not spoken to his team…. Employee had 2.5 months where he had the | 41. Undisputed as to the existence of Spinner's reporting. Disputed as to the content of the aforementioned reporting.<br><br>Plaintiff engaged with the team on the first day attending welcome events and drinks. He felt unwell during the trip, however, as his family had contracted |

12

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

| | |
|---|---|
| opportunity to learn more of the role. First couple weeks of year took off.<br><br>Linda Spoke to [Plaintiff] in November. He was still approaching situation as negotiation…. She did not hear from him for 2 weeks…. Prior to sales kick off had a lot of training that needed to be done. Got reporting on training and employee took off and did not complete the training he completed 3 of the 19. The employee was out until the 9th of Jan. She reached out to [Plaintiff's prior manager], and he had not put in the request prior to going on vacation. The 9th employee did not show up. He came back on the 11th. Sales kick off was following week.<br><br>Employee shows up for sales meeting. Showes up late. Sitting in back table. When it comes time to work on project he does not engage with team. End of session tells her he is not feeling well. Did not hear from him rest of day did not show next sessions. Emailed her following day advised he was not feeling well and went home….<br><br>Spinner Decl. Ex. B (Ex. 12 to McArthur Dep.). | norovirus. Out of due caution and respect for other team members at the SKO, one of whom was pregnant at the time, Plaintiff chose to distance himself from the rest of the team. Plaintiff even informed Spinner of his poor health for which he was taking anti-diarrheal medication.<br><br>MacKillop Tr. 47:20-23; McArthur Tr. 97:9 – 100:7; 182:18-183:16; 194:11-16 |
| 42.  On February 26, 2024, LNRS | 42. Undisputed. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE,
PARTIAL SUMMARY JUDGMENT**

| | |
|---|---|
| Employee Relations issued a Disciplinary Action Written Warning for "General Misconduct."<br><br>Ex. 14; McArthur Tr. 133:7-136:11. | |
| 43. Among other things, the Disciplinary Action lists that as incident details:<br><br>1/21: When questioned about being late for a customer meeting, the response was given with irritation. "Can't we just start this off with a positive note."<br><br>1/28: During a discussion about goals and performance evaluation, the response was once again laced with anger and exasperation about an obsession for performance review.<br><br>Insubordination<br>1/21: When Manager advises for you to manage tasks, You pass the account on to another employee.<br>Complying with RELX Policies:<br>Attendance:<br>1/3/2024-1/102024: Took PTO the first 19 days of the year without prior approval and did not request via Workday until questioned.<br>2/19/2024: Did not request PTO 2/20/2024 not able to reach by phone, email, or teams. No pto requested prior to date. | 43. Undisputed. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

| | |
|---|---|
| Phishing Attempt Training: 2/7/2024 2nd Phishing Attempt Failure<br><br>The Disciplinary Action states, in part:<br><br>The expectations require [sic] for this role is one of respect and accountability. Taking responsibility and managing accounts… engaging with customers and finding ways to meet & exceed their needs… and at all time[s] be professional and courteous to Management, Stakeholders, and Employees."<br><br>Ex. 14. | |
| 44. During February 2024, Spinner put together a draft 30-day Performance Improvement Plan ("PIP") for Plaintiff in LNRS's Workday program, which Spinner circulated to other members of LNRS management in early March 2024.<br><br>Spinner Decl. ¶ 5 – 8 & Exs. C-F; Ex. 12 at 2; Transcript of the Deposition of Rodney Holton ("Holton Tr.") 34:24 -35:2. | 44. Undisputed. |
| 45. Because Spinner had inadvertently submitted (rather than saved) the draft PIP in Workday, Plaintiff received a copy of the draft PIP.<br><br>Declaration of Rodney Holton ("Holton Decl." ¶ 2. | 45. Undisputed. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

| | |
|---|---|
| 46. The PIP was rescinded by Employee Relations shortly after Plaintiff received it because the PIP had not yet been finalized.<br><br>Holton Decl. ¶ 2. | 46. Undisputed, but immaterial. |
| 47. Plaintiff admitted at deposition that he did not know why the PIP was rescinded.<br><br>McArthur Tr. 124: 14-125: 12. | 47. Disputed, but immaterial.<br><br>The alleged fact mischaracterizes Plaintiff's testimony. Plaintiff only testified that he was not told why the PIP was rescinded, not that he did not know why the PIP was rescinded. Regardless, Plaintiff's understanding as to why the PIP was rescinded is immaterial. The material issue here is that Joe Gaines described the PIP as "garbage" with unachievable metrics.<br><br>McArthur Tr. 123:11 – 125:12. |
| 48. On March 4, 2024, Employee Relations sought to meet with Plaintiff to discuss the parameters of his PIP, and Spinner sent Plaintiff a Microsoft Teams meeting invitation for March 6, 2024 to Plaintiff with the subject line "Performance Plan Delivery with HR." Plaintiff accepted this invitation the same day. This meeting was later rescheduled for March 8.<br><br>Exs. 15, 16, 17; McArthur Tr. 141:4 – 142:13, 147:22 – 149:23; Gaines Tr. 11:4 – 14; Spinner Decl." ¶ 7 and Ex E. | 48. Undisputed. |

16

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

| | |
|---|---|
| 49. On March 7, 2024, Plaintiff informed Gaines about his sister's illness and his need for leave.<br><br>Ex. 4; McArthur Tr. 23:10-24:14. | 49. Undisputed. |
| 50. Plaintiff admitted at deposition that this request for leave on March 7 was his first and only request for leave, and that his request for protected leave was granted, without any issue.<br><br>Ex. 19; McArthur Tr. 24:8-25:4, 25:21-27; 28:12-29:23; 160:22-161:11, 166:16-167:12 | 50. Undisputed. |
| 51. Plaintiff also admitted at deposition that he was made aware of concerns about his performance before he ever asked for protected leave.<br><br>McArthur Tr. 128:20-25, 129:13-16, 130:3-15 | 51. Undisputed. |
| 52. Plaintiff's leave ultimately delayed the implementation of the PIP until his return<br><br>Ex. 12, at 3. | 52. Undisputed. |
| 53. Plaintiff took a protected leave of absence from March 10, 2024, to April 28, 2024.<br><br>McArthur Tr. 171:14-172:5. | 53. Undisputed. |
| 54. During this period of leave, LNRS restricted Plaintiff's access to IT because employees, like Plaintiff, who are out on a protected leave of absence are not | 54. Undisputed. |

17

| | |
|---|---|
| permitted to work and Plaintiff had expressed a desire to continue "attend[ing] calls" during his leave.<br><br>Ex. 4; 21; McArthur Tr. 169:3-171:19 | |
| 55. Plaintiff admitted at deposition that, while he had wanted to take more leave, it was ultimately his own decision to return to work after about eight weeks of leave.<br><br>McArthur Tr. 36:3-21, 200:16-22. | 55. Undisputed. |
| 56. Following Plaintiff's return from leave, a thirty-day PIP was initiated on May 2, 2024.<br><br>Ex. 22; McArthur Tr. 181:3-17. | 56. Undisputed. |
| 57. The PIP outlined the following Performance Improvement Objectives:<br><br>Certification and active demonstration of product fit knowledge while working plan. Successful Association Certification, including, but not limited to exam, & value prop presentations Active dialog with clients in wide array of product sets during plan period (BRM, F&1, CRD, FCC). Certification 6/3/2024.<br><br>Individual Selling and Coaching Weekly One on Ones with direct report and leadership to track performance/activities. Weekly | 57. Undisputed. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

| | |
|---|---|
| Radar 5/6/2024.<br><br>Timely response and accurate follow up on all open action items and tasks. Respond to emails within 4 hours (during the work day. All tasks and open action items need to be completed within 24 hours. CC Linda Spinner, Brittany Kirstein Attend scheduled calendar invites and be prepared to run them for each call you are primary on.<br><br>5/6/2024<br>Transition form planning to action Presentation to leadership, initiation of proactive client outreach<br><br>5/15/2024<br>Work plan. Client engagement and opportunity identification Minimum $750,000 of SF Opportunity (created starting 1/1/2024) by end of plan. Half of this amount in Stage 3 or higher.<br><br>6/3/2024<br><br>Ex. 22. | |
| 58. Throughout the PIP, Spinner spent an average of five hours per week working with Plaintiff in order for him to achieve the above-listed objectives.<br><br>Spinner Decl. ¶ 9 | 58. Undisputed. |
| 59. Spinner attended customer calls | 59. Undisputed. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

| | |
|---|---|
| with Plaintiff and held weekly one-on-one meetings with him.<br><br>McArthur Tr. 185:17-186:17. | |
| 60. Plaintiff testified that the weekly calls with Spinner were productive, and it was clear to him what the performance objectives were.<br><br>McArthur Tr. 186:18-21. | 60. Undisputed, but immaterial. |
| 61. Plaintiff also received progress notes on his PIP from Spinner.<br><br>Exs. 23, 24; McArthur Tr. 187:20-25, 188:21-189:11, 191:22-193:13. | 61. Undisputed, but immaterial. |
| 62. Neither Joe Gaines nor other member of management– including Spinner and MacKillop–had a mindset to terminate Plaintiff, but wanted to see if Plaintiff could succeed on the PIP.<br><br>Transcript of Deposition of Joe Gaines ("Gaines Tr.") Tr. 9:19-10:14. | 62. Disputed.<br><br>The PIP was a mere pretext. Joe Gaines denied the initial draft of the PIP labeling it as "garbage" and describing the metrics identified therein as "not achievable" and "not fair." While the subsequent PIP was slightly altered, the original PIP drafted Linda Spinner shows that Plaintiff was set up for failure. In response to the multiple attempts from HR and Employee Relations to delay adverse employment action and instead provide coaching, training, or support to afford Plaintiff the opportunity to demonstrate improvement, Spinner mocked the advice and asked what made Plaintiff so special to warrant further coaching.<br><br>Management also began planning for Plaintiff's termination while he was |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

| | |
|---|---|
| | actively on leave and just one week into the PIP period, Spinner began requesting authority to terminate Plaintiff following the end of the PIP. Moreover, at the conclusion of the PIP, Management remained silent. They held no final meetings, sent no written evaluations, or had any communications indicating that Plaintiff had not successfully completed the PIP. Finally, despite their platitudes endorsing the team first goals of a PIP, both MacKillop and Spinner celebrated their lawyering skills that eventually led to Plaintiff's termination.<br><br>Morgan Decl. at ¶ 4, 6, 7, 8, 9, 10, 11, 12, 13, 14, 22, 24; McArthur Tr. 188:1-16; McArthur Decl. at ¶ 6. |
| 63. Gaines reviewed the first draft of the PIP prepared by Spinner, looking at the objectives that were being proposed one by one, based on the knowledge he had being in his role for a significant period, to make sure that the PIP would be fair and would give Plaintiff an opportunity to be successful, because the very purpose of a PIP is to coach towards success following completion of the PIP.<br><br>Gaines Tr. 11:15-13:1. | 63. Disputed.<br><br>While Joe Gains may claim that the general purpose of a PIP is to provide coaching, that is not the case in its implementation here.<br><br>Morgan Decl. at ¶ 4, 6, 7, 8, 9, 10, 11, 12, 13, 14, 22, 24; McArthur Tr. 188:1-16; McArthur Decl. at ¶ 6. |
| 64. The objectives as set in the original draft of the PIP were achievable, but Gaines made | 64. Disputed.<br><br>The objectives set in the original PIP |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

| | |
|---|---|
| various adjustments were he believed appropriate.<br><br>Gaines Tr. 13:3-15:3. | were not achievable. Gaines, himself, described the original PIP as "garbage" and that it was unfair and unachievable.<br><br>Morgan Decl. at ¶ 4, 6, 7, 8, 9, 10, 11, 12, 22; McArthur Tr. 186:25-187:6 |
| 65. The objectives in the PIP were achievable within the PIP's 30-day period.<br><br>Gaines Tr. 11:15-13:1. | 65. Disputed<br><br>The objectives set in the PIP were unfair, unachievable, and overlapped with Plaintiff's period of protected leave. In other words, approximately one third of the time allotted to Plaintiff to cultivate salesforce opportunity took place during a period in which Plaintiff's access to work was restricted due to his protected leave of absence.<br><br>McArthur Tr. 186:22-187:19; 30:25-31:11<br><br>Morgan Decl. at ¶ 4, 6, 7, 8, 9, 10, 11, 12, 22; McArthur Tr. 186:25-187:6 |
| 66. The third objective (securing a minimum of $100,000 closed incremental revenue) was "very achievable" within a 30-day period because, among other things, Plaintiff had inherited existing sales opportunities when he assumed his new role, and likely also had sales opportunities that could be carried over by Plaintiff from his prior role.<br><br>Gaines Tr. 31:24-33:4. | 66. Disputed.<br><br>The objectives set in the original PIP were not achievable. Gaines, himself, described the original PIP as "garbage" and that it was unfair and unachievable. None of the metrics set forth in the May 2, 2024 PIP were substantively different from the original "unfair" and "garbage" PIP that was shot down by Gaines.<br><br>Morgan Decl. at ¶ 4, 6, 7, 8, 9, 10, 11, 12, 22; McArthur Tr. 186:25-187:6 |
| 67. The last-listed objective | 67. Disputed. |

22

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

| | |
|---|---|
| ("Minimum $750,000 of SF Opportunity created starting 1/1/2024 by end of plan. Half of this amount in Stage 3 or higher") was achievable because it did not require Plaintiff to close any sales, but only to identify sales opportunities for himself and his team and log them into the company's Salesforce program.<br><br>Gaines Tr. 33:5-36:15. | The objectives set in the original PIP were not achievable. Gaines, himself, described the original PIP as "garbage" and that it was unfair and unachievable. None of the metrics set forth in the May 2, 2024 PIP were substantively different from the original "unfair" and "garbage" PIP that was shot down by Gaines. Moreover, demands within the PIP failed to account for time spent on protected leave.<br><br>Morgan Decl. at ¶ 4, 6, 7, 8, 9, 10, 11, 12, 22; McArthur Tr. 186:25-187:6; Holten Tr. 35:6 - 36:17; Hughto 30:19 - 31:15 |
| 68. "Stage 3" is the stage where a customer is at least willing to consider or test an LNRS product.<br><br>Gaines Tr. 33:9-34:5. | 68. Undisputed, but immaterial. |
| 69. The length of sales cycles for applicable LNRS products can be as short as less than one month from identification of the opportunity to close of the sale.<br><br>Gaines Tr. 35:15-37:12. | 69. Undisputed that some outlier sales cycles can be less than one month.<br><br>Disputed as to any implication that typical sales cycles are as short as less than one month from identification of the opportunity to close of the sale.<br><br>Gaines Tr. 35:15-37:12. |
| 70. At deposition, Plaintiff admitted he did not secure incremental minimum revenue of $100,000, | 70. Undisputed. |

23

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

| | |
|---|---|
| as required by the third objective listed in the PIP.<br><br>McArthur Tr. 183:23-184:11, 195:11-22. | |
| 71. Plaintiff failed to secure any incremental revenue during the PIP period.<br><br>McArthur Tr. 183:23-184:11, 195:11-22. | 71. Undisputed. |
| 72. Plaintiff admits at deposition that he did not achieve the last-listed objective–logging into the Salesforce program a minimum of $750,000 of potential sales possibilities.<br><br>McArthur Tr. 184:12-185:8. | 72. Undisputed. |
| 73. Throughout his tenure in the new role and while on the PIP, Plaintiff failed to close a single deal.<br><br>Ex. 25; McArthur Tr. 195:20-22, 200:23-202:2 | 73. Undisputed. |
| 74. LNRS determined the PIP was unsuccessful, and notified Plaintiff of his termination for that reason on July 2, 2024.<br><br>Ex. 25; McArthur Tr. 186:6-12, 211:25-212:2 | 74. Disputed insofar as the purported evidence does not support the characterization that Plaintiff was terminated because the PIP was unsuccessful.<br><br>Ex. 25 of Plaintiff's Deposition; McArthur Tr. 186:6-12, 211:25-212:2; Spinner Tr. 43:15 - 44:14. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE,
PARTIAL SUMMARY JUDGMENT**

| | |
|---|---|
| 75. Following his termination, Plaintiff attempted to negotiate a severance with LNRS in a series of emails. In this email correspondence, Plaintiff expressed an opinion that his termination was unfair because the requirements of the PIP were purportedly "unrealistic" and because he had been "made to feel unwelcome" by Spinner since he started his new role a the beginning of January 2024.<br><br>Ex. 27; McArthur Tr. 212:9-214:13. | 75. Undisputed. |
| 76. In a reply to Plaintiff's initial email message requesting severance, LNRS informed Plaintiff that "[d]ue to your breach of the retention bonus contract as well as your failure to meet the objectives of the PIP, the Company ended your employment and will not be offering you severance."<br><br>Ex. 27, at 4 (email from Jimmy Hughto to Nick McArthur (July 3, 2024 21:06)) | 76. Undisputed. |
| 77. Plaintiff's email messages about severance do not mention any purported belief that Plaintiff had been retaliated against for having taken CFRA leave.<br><br>Ex. 27; McArthur Tr. 212:9-214:13. | 77. Undisputed. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

**PLAINTIFF'S UNCONTROVERTED FACTS AND SUPPORTING EVIDENCE**

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 1. Nick McArthur devoted fourteen years of his professional life to RELX. | McArthur Tr. 75:5-13. |
| 2. He began his career with RELX in the United Kingdom and, based on consistent success, leadership ability, and institutional trust, was transferred to the United States under RELX's talent relocation program. | McArthur Decl. at ¶ 2. |
| 3. For approximately seven years, Mr. McArthur worked remotely from California in a senior executive sales role, ultimately holding the title Director of Sales. Throughout this period, he received salary increases, promotions, and expanding responsibility. | McArthur Decl. at ¶ 3. |
| 4. In 2020, Plaintiff reached 211% of sales his target and 101% of his revenue target. | Morgan Decl. at ¶ 2. |
| 5. In 2021, Plaintiff reached 120% of sales his target and 101% of his revenue target. | Morgan Decl. at ¶ 2. |
| 6. In 2022, Plaintiff reached 224% of his sales target and 115% of his revenue target. | Morgan Decl. at ¶ 2. |

26

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

| | |
|---|---|
| 7. In 2023, Plaintiff reached 160% of his sales target and 100% of his revenue target. | Morgan Decl. at ¶ 2. |
| 8. Finally, in 2024, prior to taking a leave of absence, Plaintiff was tracking at 116% of his revenue target. | McArthur Decl. at ¶ 4. |
| 9. For roughly ten of his fourteen years at RELX, Mr. McArthur was named to the President's Club, a recognition reserved for the company's highest-performing sales leaders. | McArthur Decl. at ¶ 3. |
| 10. RELX's own HR and Workday records produced in discovery contain no active disciplinary actions, no unresolved warnings, and no operative performance improvement plan at the time Mr. McArthur requested CFRA leave. | McArthur Decl. at ¶ 4. |
| 11. In Late January 2024, Linda Spinner and Jim MacKillop reached out to Jimmy Hughto in Human Relations in an attempt to discipline and/or have Plaintiff removed from the new organizational group. | Morgan Decl. at ¶ 3. |
| 12. In response, Hughto advised, "I don't think an immediate termination is the right step or even possible at this time." | Morgan Decl. at ¶ 3. |
| 13. Later, Plaintiff contacted Joe Gaines to discuss management's escalation | McArther Tr. 132:8-133:19. |

27

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE,
PARTIAL SUMMARY JUDGMENT**

| | |
|---|---|
| of critiques against Plaintiff. | |
| 14. Gaines reacted with visible concern, shook his head on camera, and told Plaintiff to "leave it with me." | McArther Tr. 132:8-133:19; 120:17-124:13. |
| 15. Shortly thereafter, Plaintiff received notice through Workday that the proposed action was rescinded. | McArther Tr. 120:17-124:13; Holton Decl. ¶ 2. |
| 16. In a smoking gun Teams message regarding the March 3 PIP, Gaines wrote:<br><br>"FYI… I put the brakes on the Nick M PIP that was supposed to be delivered tomorrow. I received a copy and it was garbage, frankly. I'm meeting with Linda and Jim tomorrow to discuss objectives and how we can drive performance. The PIP was written as a collection of stuff that he likely couldn't achieve and I didn't feel it was fair." | Morgan Decl. at ¶ 4. |
| 17. On or about March 7, 2024, Plaintiff informed Linda Spinner and Joe Gaines about his sister's illness and his need for leave. | Morgan Decl. at ¶ 5. |
| 18. Joe Gaines immediately approved his request and Plaintiff's leave began on March 10, 2024. | Morgan Decl. at ¶ 5. |
| 19. Even before the implementation of the May 2, 2024 PIP, *while Plaintiff was actively on protected leave*, MacKillop began planning for | Morgan Decl. at ¶ 6. |

28

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

| | |
|---|---|
| Plaintiff's termination in an April 12, 2024 email to Joe Gaines providing a roadmap for termination. | |
| 20. In this roadmap, MacKillop writes, "Linda and I concur that if he does not provide medical certification and/or he is not approved for unpaid leave we move to terminate." | Morgan Decl. at ¶ 6. |
| 21. He continues, "If he is approved for unpaid leave under CFRA, we may need to readdress at the end of his Leave of Absence." | Morgan Decl. at ¶ 6. |
| 22. Similarly, on March 18, 2024, Linda Spinner reached out to Employee Relations Advisor, Rodney Holton, complaining that "Nick never let Katrin know that he was going to be out for the 2 seeks he was going to be in the UK" and asking that , "[a]ssuming he will return on Monday, per his communication, can I put the PIP meeting on his calendar for Tuesday?" | Morgan Decl. at ¶ 7. |
| 23. In April, Spinner explained to Holton that she, along with others, had "discussed [the PIP] with HR on our call on Friday" and that they "all agreed that there was no need for the PIP to wait another week." | Morgan Decl. at ¶ 8. |
| 24. During Plaintiff's leave, in an April 2024 email between Spinner and MacKillop discussing Plaintiff's leave, MacKillop writes, "Right when you thought it couldn't get more ridiculous" and that it "rubs [him] the wrong way for this to be | Morgan Decl. at ¶ 9. |

29

| | |
|---|---|
| rewarded." | |
| 25. In describing the circumstances of Plaintiff's leave in a subsequent email to Spinner, MacKillop writes, that Plaintiff's leave is "so preposterous I cannot believe its true." | Morgan Decl. at ¶ 10. |
| 26. Linda responds, stating, "[t]hat is preposterous." | Morgan Decl. at ¶ 10. |
| 27. Others also convey their skepticism accusing Plaintiff of "working the system." | Morgan Decl. at ¶ 11. |
| 28. In response to the foregoing inquiries, HR advised Linda that "If Nick took emergency medical leave, there is nothing [she] can do," that she "can not punish him or hold him to that," and suggested that she "[find] out how he is doing and let him know Tuesday [they] will meet to move forward with the plan." | Morgan Decl. at ¶ 7. |
| 29. In response, Spinner forwarded the foregoing correspondence to MacKillop, commenting, "Really???" | Morgan Decl. at ¶ 23. |
| 30. Per Joe Gaines, "the purpose of the PIP… is to coach towards success and resuming things after the PIP." | Gaines Tr. 12:18-20. |
| 31. Nonetheless, on May 1, *the day before the start of the PIP*, Jim MacKillop escalated a complaint to Jeff Hahn on the basis that he had | Morgan Decl. at ¶ 24. |

30

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

| | |
|---|---|
| "just caught wind of two potential incidents." | |
| 32. He admits the complaints were "hearsay" but stated that "[i]f either of these can be confirmed, can we build a case to act on them." | Morgan Decl. at ¶ 24. |
| 33. The following day, despite receiving advice to the contrary, Operations moved forward with placing Plaintiff on a PIP on May 2, 2024. | Ex. 22 of Plaintiff's Deposition; McArthur Tr. 181 :3-17. |
| 34. Among its many requirements, the PIP demanded that Plaintiff "secure incremental revenue Minimum $100,000 closed by end of PIP." | Exhibit 22 of Deposition of Plaintiff. |
| 35. The PIP also required that Plaintiff create and identify $750,000 in new salesforce opportunities, half of which at a heightened engagement stage of 3 or higher, during the period dating back to January 1, 2024 through the end of the PIP on June 3, 2024. | Exhibit 22 of Deposition of Plaintiff. |
| 36. The PIP failed to account for the fact that a significant portion of deals within the life-cycle of Plaintiff's team ranged between 6-8 months. | McArthur Decl. at ¶ 5. |
| 37. Of note, the period in which Plaintiff was required to accumulate at least $750,000 in new opportunities explicitly overlapped and failed to account for the seven | Exhibit 22 of Deposition of Plaintiff |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

| | |
|---|---|
| weeks for which Plaintiff was on protected leave. | |
| 38. Put differently, approximately one third of the time allotted to Plaintiff for creation of $750,000 in new opportunity took place during Plaintiff's protected leave, a period in which RELX restricted Plaintiff's work access. | McArthur Tr. 186:22-187:19; 30:25-31:11 |
| 39. Moreover, creating $750,000 of opportunity at any level is unreasonable as that amounts to some people's yearly targets. | McArthur Tr. 186:22-187:19 |
| 40. Nonetheless, just one week into Plaintiff's PIP period, Spinner wrote to MacKillop stating: "I have my first check in with Nick tomorrow regarding his plan. I do want to make sure that I understand the way this will work, and want to make sure that we are all in agreement. If Nick does not meet the metrics we have put in place for the plan, by June 3, will we be able to terminate at that point?" | Morgan Decl. at ¶ 12. |
| 41. Again, Employee Relations advised that Plaintiff is a "high-risk employee" and that he would "not recommend terminating on June 3rd" but rather "move him to a Final Written Warning continuing with the areas he has not been successful | Morgan Decl. at ¶ 12. |

32

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

| | |
|---|---|
| with." | |
| 42. Holton also advised that if Plaintiff was "still not successful" after an additional 30 days, "then we will have a discussion about termination." | Morgan Decl. at ¶ 12. |
| 43. In a formal memo to Spinner and MacKillop, Holton "strongly advised [Spinner] to reconsider [her] plan to terminate [Plaintiff] in June." | Morgan Decl. at ¶ 13. |
| 44. He laid out the "Risks of terminating the employee in June" stating that "[t]erminating an employee who just returned from leave could expose the company to a lawsuit for wrongful termination, discrimination, or retaliation" and that the "employee could claim that he was fired because of his… protected leave" and that he "was not given a fair chance to improve his performance, since he was placed on a [PIP] within two days of his return." | Morgan Decl. at ¶ 13. |
| 45. He explained that "[i]nstead of terminating the employee in June, [she] could extend the PIP for another 30 days" in order to "give the employee a reasonable opportunity to demonstrate his improvement and show that that company is acting in good faith and following a fair process." | Morgan Decl. at ¶ 13. |
| 46. The memo advised that she | Morgan Decl. at ¶ 13. |

33

| | |
|---|---|
| "provide the employee with more feedback, coaching, training, or support to help him succeed" | |
| 47. He concluded his memo on the subject urging that Spinner "rethink [her] plan to terminate the employee in June and consider the risks and alternatives." | Morgan Decl. at ¶ 13. |
| 48. Again, Spinner pushed back against the advise of Employe Relations, sarcastically asking whether his advice was a "recommendation or a requirement?" and stating that she would "prefer not waiting another 30 days [for termination.]." | Morgan Decl. at ¶ 12. |
| 49. She even went as far as mocking his advice, retorting, "I don't know what makes [Plaintiff] more high risk than any other white male under 50. The fact that he lives in CA? That means everyone who lives in CA gets cut more slack?" | Morgan Decl. at ¶ 12. |
| 50. She further explained that it would be "6 months in June, without any performance from [Plaintiff] at all. | Morgan Decl. at ¶ 12. |
| 51. Following the completion of the PIP, Operations held no final meetings, written evaluations, or communications indicating that Plaintiff had not successfully completed his PIP or that any adverse employment action would follow. | McArthur Tr. 188:1-16; McArthur Decl. at ¶ 6. |
| 52. The last substantive communication Plaintiff had regarding the PIP occurred on or about May 30, 2024. | McArthur Tr. 185:9-186:9; 191:6 - 192:13; McArthur Decl. at ¶ 6. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

| | |
|---|---|
| 53. On July 2, 2024 Plaintiff was terminated. | McArthur 188:6-12. |
| 54. The next day, Spinner and MacKillop celebrated Plaintiff's termination as Spinner exclaimed, "So perfect! Thank you!" to which MacKillop dryly replied, "Maybe I'll be a lawyer in my next career." | Morgan Decl. at ¶ 15. |
| 55. Despite repeated assertions that Plaintiff's failure to repay the Duplicate Retention Bonus served as a basis for Plaintiff's termination, Spinner, MacKillop, and Gaines all testified that the repayment, or lack thereof, was not a factor in the decision to terminate Plaintiff. | MacKillop Tr. 54:7-18; Gaines Tr. 48:8-12; Spinner Tr. 60:18-25. |
| 56. The repayment stems from a duplicate payment of a retention bonus that occurred in August 2021 and existed long before Plaintiff took a leave of absence in March 2024. | Morgan Decl. at ¶ 21. |
| 57. In the time between repayment issue arising and Plaintiff's leave, Plaintiff had not been terminated. | McArthur 188:6-12. |
| 58. On July 6, 2026, Plaintiff repaid the Bonus Monies owed. | McArthur Decl. at ¶ 7 |

DATED: July 7, 2026                    **RANEN KHADEMI PC**

By: _____
JEFFREY S. RANEN
PARISA KHADEMI
MARGARET R. WRIGHT
Attorneys for Plaintiff NICHOLAS MCARTHUR

35

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**